May it please the court. My name is Derek Newman. I represent Dave Lahoti. Mr. Lahoti registered the Vericheck.com domain name in 2003. The respondent, Vericheck Inc. of Georgia, is in the check verification business and it has alleged five claims against me. Let me ask you the question that's been bothering me and I appreciate the briefs. This case is not a stranger to the Ninth Circuit and it was returned to the judge, right? And the instructions that were given to the judge by the Ninth Circuit was, look, you didn't apply these various factors the appropriate way. So now we want you to go back, look at the record as it already has been put together. Don't take any more evidence, nothing new, nothing other than what is in the record that we have before us. Look at it, apply the appropriate standard. Okay? Now the judge, the trial judge, did arguably apply the appropriate standard and now you've come back and said, well, by the appropriate standard, yes, that's a standard, that's what the circuit said, but he came out the wrong way. He came out the wrong way. Isn't that the argument? No, Your Honor. The argument is that the district court did not apply the proper standard. We know the standards because this court set forth what they are. For example, one of them is that the court must look at the trade market issue, Vericheck, in connection with the goods or services at issue. That's, to me, arguably the only real error that the court made in following the previous panel's instructions because the Vericheck were not explicitly viewed through the lens of financial services. But it seems that one possibility, if you read the decision as a whole, is that the court was doing that and just didn't say so very artfully. Your Honor, the court articulated the standard that we just discussed, namely to view the mark in connection with the goods. So it was trying to do that. Yes, the court certainly was aware of the standard, but then proceeded to look at the component parts of the trademark, as this court said it should, Vericheck, but this court said that those components must be put back together, taken together, and analyzed in connection with the goods and services at issue. The lower court didn't do that. I guess that's what I'm asking. You're asking us, in a sense, to do what you don't want the district court to do. You're asking us to just look at that one little bit of the district court's opinion on the Vericheck, taking it apart analysis. And if you just look narrowly at that one discussion by the court, it's arguably insufficient, given the remand. But if you look at his order as a whole and read it all together, the court has done that. So why shouldn't we do that? I would respectfully disagree, Your Honor, that the court has done that. The court articulated the standard, need to view the mark in connection with the goods, need to look at the component parts, but look at them taken together, and proceeded to analyze VERI, noting that it is in no dictionary, and looked at CHECK and noted that there's a myriad of other terms that CHECK could mean, but did not take into consideration that in connection with verification of CHECK services, VERI is short, and consumers and competitors recognize this, for verification. And CHECK means exactly what it is, a notiable instrument. Even if you're right about that factor, you wouldn't necessarily win, because that factor is only one factor in the analysis. If that's the district court's only error, it just seems extremely formalistic to me to require the court to go back and do it yet again. I wouldn't ask the court to do it again. I would suggest that this court follow the Fifth Circuit Security Center case. I believe that the facts of that case are very similar to this. This court should apply the same standard in law as that case, and the policy underlying that court's... It is that the mark is descriptive. Right. And it's descriptive today. It was when it went up to the Ninth Circuit the last time, right? And it certainly was in 2003 when Mr. LaHood... So my question is, since there was only one way to come out, why did the Ninth Circuit, when it sent it back to the judge, didn't say, enter judgment in favor, given the facts, given the standard, enter judgment in favor of the defendant, right? Yes. Of the defendant. Because if it's clear today that applying the appropriate standard, you prevail. If it's clear today, why wasn't it clear last year or two years ago when the Ninth Circuit had it? And they sent it back. It made sense. To send it back? Yes. Why? The last time this court heard the case, the court recognized the judge, made no effort to apply the proper standard. Yes. But if there was the proper standard and it only led to one particular result, other than being nice to the judge, why send it back? Because the lower court should have reviewed the evidence in connection with the standard. That had never occurred to them. I know. That's the process. But I'm not asking you about the process. I'm asking you about the result. This court... And the result is the same today, you're arguing, as it was two or three years ago when the case was up here the last time. And really, what you're saying is the judge had to, under the standard enunciated, had to enter judgment in favor of your client. And didn't do so, and that's the error. He obviously misapplied the standard because he didn't enter judgment in your favor. And you're entitled to judgment as a matter of law. The key, Judge Breyer, is the process. This court cannot evaluate the standard in light of the evidence. The lower court had to do that. Now that the district court has done that, we review the evidence, we review the analysis, and we see that there is none. Well, even if you're right about that one small part, I just don't understand why we couldn't say if you look at VERA and you look at CHECK and you look at it in the context of this particular industry, that could be descriptive rather than suggestive. But in view of all the other things in the record, it's still suggestive. It doesn't mean that you would win just on that one little point, unless you can demonstrate, at least in my view, that everything else that the court did was improper in terms of the findings of fact and so on. And there were a number of things that this court did uphold the last time against your client. I guess I just am having difficulty seeing why that one thing, which I agree that if you look at it in isolation, you're correct about it, but it just doesn't seem to swing the whole case, in my view. The court erred for two reasons in coming to its conclusion, and we urge this court to review the analysis that led to the conclusion. The court's conclusion was that the mark was suggestive, but in order to reach that conclusion, the court looked at a 35-year-old trademark that is different than the trademark at issue here, because that trademark dealt with designs and logo and shape, and the PTO viewed it in that context. And facts and law have changed since then. And then finally, in reaching the conclusion that VeriCheck is descriptive, or, excuse me, suggestive, in connection with verification of check services, the court parsed the words, Veri and check, looked at them outside of the industry context, said Veri is not in any dictionary, check means something else, therefore it's suggestive. The leap in logic that the district court case is error that would require this court to reverse. Is there a concept of, if you will, harmless error in the analysis involved here? No, Your Honor. There's no case law, there's no authority of any kind that would suggest that in the factual circumstances we have here, if there are three points that the court sent, that we sent back to the district court, if you agreed hypothetically that the first two right, last one wrong, you're suggesting that we have to send it back to the district court again, as opposed to what Judge Breyer said, where we would just simply find, okay, we've done this twice, you win. You're saying there is no authority whatsoever for the concept that when you look at the totality, the fact that Veri does not have an independent, meaning that there is no concept of harmless error. There isn't in this case, and not from the cases I've reviewed. And, Your Honor, that's exactly what I'm asking for, is for this court to dismiss the case, to reverse and dismiss. Because now that the court has been given the proper standard and weighed the evidence in light of it, the court has come to a conclusion that is not supported by the evidence. We know this by reading the case. Well, that's a different question. If the only thing that the, and this is why I know you think that the district court made lots and lots of mistakes. But for the purpose of my question, I want you to assume that the only mistake, the only mistake here, is that little discussion of Veri and Check, and Check having a lot of meanings without really kind of acknowledging that in this context, Check doesn't have a lot of meanings. If that were the only problem in this decision, wouldn't all the other factors still support the ultimate conclusion that this mark is suggestive? No, Your Honor. Because really, the most important and perhaps the only question that this district court needed to analyze was whether Veri Check is descriptive of the verification of checks in the industry context of verification of check services. This court did not do that. This court looked at the word, separated it, parsed it, analyzed component parts without regard to the industry, and then leaped to the conclusion that it was suggestive. The court missed the entire analysis. Can I change the subject a little bit? I get your point on this particular issue. And the question I'm going to ask, in no way am I ascribing scienter. I just want to understand the law on this. The district court previously found, and we've said nothing to the contrary, that your client was guilty of bad faith cyber squatting. What impact, if any, should that have on our analysis of other elements of this particular case? In other words, is there some kind of a totality of the circumstances approach that flavors, for example, the discussion that Judge Graber and I have talked about in terms of the independent consideration of Veri and Check? Does the fact that your client has been, for purposes of this case, conclusively been found to be a cyber squatter and not entitled to the safe harbor provisions of the Anti-Cyber Squatting Consumer Protection Act, does that play any role whatsoever in our analysis? No, Your Honor. The question before this court is whether the district court erred by finding that Veri Check is suggestive, rather than descriptive, for verification of check services in the verification of check industry. I would like to reserve the remaining of my time for rebuttal. Thank you. May it please the Court, I'm Shannon Jost on behalf of Veri Check. I'd like to begin with your questions. The district court did explicitly consider the mark Veri Check as used in connection, not just with an entire basket of financial services, but in connection with check verification services. Looking at ER 19, taken in its entirety, the Veri Check mark is suggestive. It has no common English meaning. It doesn't appear in any dictionaries. When viewed in the context of Veri Check services, whether in whole or in part, including Veri Check's check verification services, the Veri Check mark does not immediately convey information about the nature of Veri Check. Well, the part that's of concern to me on that page is paragraph 9, where it says check could refer to a noun, a verb, or an interjection. And I think in this context, that is probably not correct. I mean, in the context of this industry, it's not going to refer to an interjection like, you know, check out that snowstorm. I mean, it's clearly referring to what we think of as negotiable instrument checks in this context. So I guess that's why I say it seems wrong but so small, and I don't know what to do with the wrong but small. With all respect, Your Honor, I disagree with you, and I believe the district court disagreed with you. There were a number of dictionary meanings before the court. Well, sure, they're there, but they're not pertinent for the most part. With respect, Your Honor, amongst the definitions before the court, to investigate or verify, to make an inquiry into, to mark, as in to make a check mark. Significantly, a check mark forms part of the consolidated design mark that's been used by my client for more than 25 years. Check has a number of meanings. Yes, it does mean a written negotiable financial instrument. It can also mean to look into, to verify a meeting which is directly pertinent to check verification services. It can mean a check mark. It can mean an investigation. All of those terms are equally relevant to, although not descriptive of, the services that are performed by my client. I want to ask you, Ms. Gilles, the same question that I asked Mr. Newman. If you assume arguendo that on the three points that the district court was to consider, that the court got it right on two of the points but not necessarily on the third, is there a concept within the law of, if you will, harmless error, a totality of the circumstances or something like that? Are you familiar with anything of that nature? I understand your question. In response, even if this court disagrees with the district court's analysis of the word part, which is a component of the mark check, even if this court disagrees with that, the mark that was before the district court was not the word check and the word verification. The mark that was before the district court was the unitary mark veri-check, and the district court considered that unitary mark, as instructed by this court, after as a step to that analysis, looking at the component parts, and found the mark to be suggestive. Your answer to my question is no, there's no harmless error. Is that correct? You're saying the district court did it right. My answer is, one, the district court did it right, but even if you disagree that the district court properly assessed the component part check, that step is merely part of the broader inquiry as to whether the consolidated mark veri-check is descriptive. So your point is that he got it right. He got it right, but even if you find he got one step right, he ultimately did apply the component. He got one step wrong. Let me go back to why I'm so concerned about this. In response to the question. In the previous panel's opinion, the court said that the district court misapplied the law by breaking it down into the component parts, very in check, and explaining that as a preliminary step, and that that's wrong as a matter of law. That's one of the things I'm looking at. Head notes 18 and 19 have the original decision. I've got a copy that doesn't have the page numbers. And what concerns me is that the paragraph that we were talking about earlier is identical to the paragraph that the district court had in its 2007 findings on the same point. And it was just basically lifted whole from the previous one that this court said was the wrong way to go about looking at it. And I guess that's my concern. And, you know, maybe all the surrounding stuff that's different is enough to kind of carry us forward. But that's what bothers me about it. We had this paragraph in 2007. This court said, no, no, no, you're going about it the wrong way. And the same paragraph comes back again. I think it may help. My view of the Ninth Circuit's instruction and the Ninth Circuit's finding of error is this. The Ninth Circuit, the prior panel, said it appears to us as though the district court did analyze the component parts of the mark. But it is unclear to us that the district court understood that that was a permissible part, a step along the way to assessing the distinctiveness of the mark as a whole. And the Lahode court, the prior panel instructed at 12.01, and I apologize, I don't have the paragraph. Yeah, I know it's not there. That it was not clear that the district court understood that it was permissible to look at the mark, the component parts, as a preliminary step on the way to an alternate determination of the probable consumer reaction to the composite as a whole. And the Ninth Circuit panel said, we understand looking at the district court's prior opinion, that the district court did look at the component parts, but we are not convinced that the district court understood that that was a permissible step towards assessing the consolidated mark. Because the district court also said in the prior decision that it's not permissible to parse the mark. So the Ninth Circuit said, okay, you did look at the parts of the mark, that was the right thing to do as a step on the way to assessing the whole mark, but we're not sure you understood that that was the right thing to do. So you want us to, in effect, impute to the district court an understanding of what our court told him to do. It's explicit. And so this time it's saying, last time we said, you know, we can't be sure the district court understood. It goes back. He has the language here. He goes to the same initial analysis, comes to a conclusion that seems to be identical. But you're saying, I gather, that because the court just wanted to be sure he understood it last time, we have to impute the fact that he did. He did the analysis just like he did before, but this time, because the court had already said, this is the way you've got to do it, he did understand this time. Is that what you're saying? The district court was explicit in that he understood and was following the Ninth Circuit's instruction. Again, on ER 019, the beginning of paragraph 9, starting at line 8, is, in fact, different from the court's prior determination. It says, in reaching this conclusion, meaning that the term Vericheck taken as a whole is suggestive, the court has considered the component parts of the Vericheck mark as a preliminary step. And he quotes from the Ninth Circuit's decision. Which we didn't disagree with before. As a preliminary step, that that was okay. Correct. Exactly. And then he concludes that when analyzed separately, even when you do parse the mark and then put them back together, the component parts do not describe Vericheck's services. So again, the district court, as specifically instructed by the Ninth Circuit, looked at the full mark, looked at the component parts of the mark. And remember, this is not a two-word mark. This is a one-word Vericheck. It doesn't have a common English meaning. Very doesn't mean anything, B-E-R-I. The court considered whether that might be understood by consumers as descriptive, as referring specifically to check verification services, and found that it would not. And again, looking at the context of the mark as used by Vericheck, whether you look only at check verification services or at all of its services, the word check could have other meanings. It could mean investigate, to make an inquiry. It could mean a checkmark, which again, if you look at Vericheck's website, there's a checkmark all over it. Vericheck inquires, investigates. Well, you're saying that the district court judge was right in his analysis. Correct. Okay. But if we were to assume, since the record was the same before it went back to the judge for his analysis, it went back to the district court. It wasn't augmented, as far as I understand. It was the same record that was presented to the Ninth Circuit the first time around. And I'm trying to figure out in my own mind, maybe I'm the only one confused about it, but I'm trying to figure out that if, in fact, if, in fact, looking at the record, there was only one way to come out, which is the Lahode's argument, why it was sent back to the district judge for an analysis. I think the answer to that question is inherent in the question. The panel did not believe there was only one way it would come out. And the reality is we are back in front of you today because Mr. Lahode disagrees with the result. Well, of course he does. If we sent it back, if we sent it back to the judge, I mean, I don't even know what you'd say. The judge got it. We could say the judge got it wrong. We said that the last time. But the record is the record. It hasn't changed anything. Of course not. And the district court found and the parties agreed that there was no need to accept more facts in order to supplement the record. And it's important to recognize neither the district court nor the Ninth Circuit were looking at it. So maybe it was sent back to the district court judge to see whether or not the parties thought that the record was adequate with respect to making the determination. And the parties agreed that the record was accurate. So, I mean, credit the Ninth Circuit. They sent it back to the district court judge to see whether or not there was something to be changed in the record with respect to the evidentiary portion. Correct. I didn't realize that. As I read it, the Ninth Circuit said, district court, you performed this analysis and you came to the conclusion that the mark is distinctive. We've looked at your analysis and we find that a couple parts of your analysis were not in accordance with our instructions from other cases. So we're going to give you those instructions again. And this time, look at the mark on the record that you have available, as the district court just did, and make sure that you've come to the right conclusion. So the district court, as instructed, took the law in its hands and, again, more explicitly, and with the Ninth Circuit's instructions very explicitly in mind, they're clear from the decision, came to the same conclusion. And this can't be viewed in a vacuum. For example, the word vericheck was registered by the Patent and Trademark Office to an Arizona company 30 years ago. I want to ask you a question. I'm looking at the district court's decision at page 1163. As the court analyzed the issue that we're just discussing, he said, furthermore, in assessing a mark's strength, the mark must be analyzed as a whole. So he clearly got the instruction from our court. He said, however, this does not, however, may not break down the mark into component parts as a preliminary step, which is indeed what the court had said before. Does the fact that he says that the mark must be analyzed as a whole indicate that he understood and followed the instruction of our court in a previous session? Of course. Absolutely. In fact, the district court there is citing to the prior panel's instruction. He's actually said it has to be analyzed as a whole. Your point, it's not broken it apart. It's together, and it's in that context that it has to be analyzed. Exactly. The instruction from the Ninth Circuit was you have to analyze the mark as a whole, but as a preliminary step, it is permissible to look at the component marks and assess whether they have separate and independent meanings. And that's exactly what the district court did. The district court, as instructed, looked at the mark as applied not to a basket of services, but to check verification services, and as a step towards assessing the mark as a whole, exactly as instructed, analyzed the component parts. And I do have other prepared remarks. I see my time is running short, and if you'd like to spend more time on the distinctiveness issue, I'm happy to. Okay. I don't think we have any more questions. I'll run through a couple of Lohody's other attempted attacks. Obviously, we've just addressed the distinctiveness. Mr. Lohody also suggests it was improper for the court to consider whether there's a dictionary definition for the word vericheck. This court has repeatedly instructed that that's a reasonable starting point. In Submando and Brookfield, in a number of cases, this court already has found that the court was legally correct to rely on the Arizona registrations, in which the PTO found the mark to be inherently distinctive. There are no changed facts or circumstances. In fact, the most recent decisions of the PTO show that the PTO continues to view the mark vericheck as inherently descriptive. There simply is no error. Mr. Lohody obviously disagrees with how the district court assessed the distinctiveness of the mark and the various counterclaims by vericheck. But as this court, I hope we'll find the judgment should be affirmed in its entirety. Thank you, counsel. Mr. Newman, you have a couple of minutes of rebuttal time remaining. Thank you, Your Honor. The district court did not view the mark in the industry context. Rather, the court parroted the language of this court's prior order and was diligent about doing so but did not support its conclusion with any analysis or cite to any evidence. Is that required under our case law or Supreme Court law? The analysis, yes. There must be, if the court is performing an analysis, support for the conclusion. What case do you cite? Well, I'd start by citing this court's prior order that the court has to follow a certain standard. The court laid out the standard and stated its reasons for coming to its conclusion, but the reasons are not consistent with the standard. And so while the court can cite this court's prior order and say that it followed it, in truth it did not. Check has no other meaning in connection with verification of check services, and the court, even though it looked at the dictionary, never found that in the industry context check has any other meaning. And, in fact, there was no evidence submitted in that regard. So while there's argument made today that there's a checkmark picture on the trademark, that wasn't what the court considered. That wasn't part of the findings. It's simply that check means negotiable instrument in the verification of check industry. The word can't have another meaning in connection with verification of checks, and neither the court or any evidence ever identified any other possible meaning. And to Judge Smith's question, this court cannot impute to the district court an understanding of what this court instructed, because the analysis provided in the lower court's order, or lack thereof, indicates otherwise. It indicates clearly that the court could not find against Mr. Lahody while still following this court's prior order. And I should point out that Judge Smith's question earlier about bad faith. If that is true, then why, as Judge Breyer asked, didn't our prior panel simply rule in favor of your client, since the facts were not going to change? Because the prior panel was asking the lower court to review the evidence, apply the proper standard, come to a conclusion. But if it's all a matter of law, as I gather you are suggesting, what's to send? What's to review? Had the court had evidence in support of its conclusion, which we would have seen in the analysis, then this appeal would be meritless. But there was no evidence in support of that conclusion after applying the proper standard. I don't think you're responding to Judge Smith's question. I think the question is, you know what the question is, right? This court cannot weigh evidence. This court had to send it to the district court to do so, and there was a lack of evidence, but yet a conclusion that was based on evidence that was never there, indicating clear error in applying the standard. And for that reason, we urge this court to follow the security center case of the Fifth Circuit, facts and the law being the same, and reverse this matter, and have those claims against Mr. Lahody dismissed, notwithstanding the fact that he appears to be a bad actor, which is why a court would want to rule against him, but cannot if, in the event that the law shows that the mark is descriptive, the claims must fail. Thank you. Thank you, counsel. The case just argued is submitted. We appreciate the arguments.
judges: Breyer, Graber, Smith M.